Case 1:10-cv-05407-NGG   Document 21   Filed 06/27/12   Page 1 of 13 PageID #: 500

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ JUN 2 7 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSEPH FAIT,

                    Plaintiff,

   -against-

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                    Defendant.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

10-CV-5407 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

    Plaintiff Joseph Fait brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the Social Security Administration's ("SSA") decision that he was not disabled on or before December 31, 1985, and therefore was not entitled to Disabled Adult Children's ("DAC") benefits, Disability Insurance Benefits ("DIB"), or supplemental security income ("SSI") from June 1986 through December 1988. Fait argues that the SSA made three errors in denying his application for benefits: that it (1) failed to properly apply the so-called "special technique" in evaluating his mental impairment; (2) failed to follow the factors for determining the onset date of his disability; and (3) applied the wrong standard for determining the materiality of his substance abuse. The Commissioner of Social Security has filed a motion, and Fait has filed a cross-motion, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Commissioner's motion is DENIED, Fait's motion is GRANTED, and this case is REMANDED to the SSA for proper application of the "special technique" and, to the extent necessary, to determine the onset of disability and the materiality of Fait's substance abuse.

1

## I.     BACKGROUND

Fait was born on February 13, 1963. (Administrative Record (Docket Entry # 19-2) ("Rec. 3") at 97.[1]) On June 5, 1986, he applied for SSI benefits, alleging disability since 1984 due to psychological problems and a torn meniscus of the left knee. (Id.) This claim was denied on July 21, 1986, and Fait did not appeal. (Id.)

On July 6, 1987, Fait filed a second claim for SSI benefits, as well as claims for DIB and DAC benefits, alleging disability due to depression and emotional problems since 1984. (Id.) Fait's DIB claim required a finding of disability on or before December 31, 1985, his date last insured, and his DAC claim required a finding of disability on or before February 12, 1985, the day before his twenty-second birthday. See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. § 404.350(a)(5). These claims were denied on September 30, 1987, and his request for reconsideration was denied on December 31, 1987. (Rec. 3 at 97.) Fait did not appeal the unfavorable reconsideration determination. (Id.)

On March 15, 1988, Fait filed a third claim for SSI benefits, alleging disability due to depression since December 1987. (Id.) This claim was denied on June 21, 1988, and Fait did not file an appeal. (Id.)

On January 31, 1989, Fait filed a fourth claim for SSI benefits, alleging disability due to a psychiatric condition since December 15, 1985. (Id. at 98.) On March 31, 1989, Fait was found by a state agency psychiatrist to have a schizophrenic disorder that met the criteria of § 12.03(C) of Appendix 1 to Subpart P of SSA Regulations No. 4, with a disability onset date of January 1, 1987. (Id.) Fait began receiving SSI benefit checks in May 1989, including benefits back-dated to January 1989, the month before he applied for benefits. (Id.)

---

[1]     The administrative record was divided into multiple items in the docket and given different pagination. (See Docket Entry ## 19, 19-1, 19-2, 19-3.) The page numbers listed throughout refer to the pages of the individual docket entries, not the administrative record as a whole.

2

In November 1998, Fait moved to reopen his July 6, 1987, claims for DIB, DAC, and SSI benefits, on the grounds that he had "good cause" under Social Security Ruling ("SSR") 91-5p for his failure to timely appeal the unfavorable decision due to his "ongoing extreme psychiatric impairment." (Id.) On November 10, 1999, a hearing was held before Administrative Law Judge ("ALJ") John Noonan in which Fait and his uncle, Irwin Leibowitz, testified. (Id.) Fait's motion to reopen his case was denied by ALJ Noonan because, despite his chronic schizophrenia, personality disorder, and obsessive-compulsive disorder, the ALJ found that he did not have a degree of mental impairment that would have prevented an understanding of the review process. (Id.) The Appeals Council denied Fait's request for review, and he commenced an action in the United States District Court for the Eastern District of New York. (Id.)

On July 29, 2004, District Court Judge Edward R. Korman issued an Order remanding the matter to the SSA because of the SSA's inability to locate the cassette tape of the oral hearing before ALJ Noonan. (Id. at 99.) On October 6, 2004, the Appeals Council vacated the decision of ALJ Noonan and remanded Fait's claims to an ALJ for a de novo hearing and a new decision on Fait's motion to reopen. (Id.) On April 19, 2006, ALJ Peter F. Crispino again denied Fait's motion to reopen, and he commenced a second action in this District. (Id.)

In September 2006, District Court Judge Dora Irizarry issued a Stipulation and Order granting Fait's motion to reopen and remanding Fait's claim to the SSA for a full hearing on Fait's substantive claims. (Id.) On April 27, 2007, the Appeals Council again vacated the final decision of the ALJ and remanded the case to ALJ Lucian A. Vecchio. (Id.) ALJ Vecchio held a hearing on August 2, 2007, in which Fait and medical expert Rita Clark, M.D., testified. (Administrative Record (Docket Entry # 19-3) ("Rec. 4") at 32-57.) On December 15, 2007, ALJ Vecchio issued a written decision concluding that Fait "was not under a disability within the

meaning of the Social Security Act on or before his disability insured status expired on December 31, 1985, or on or before the date he attained age 22, i.e. February 12, 1985." (Id. at 100.) On September 22, 2010, the Appeals Council declined to assume jurisdiction over Fait's claim (id. at 74-77), rendering ALJ Vecchio's decision the final decision of the Commissioner. See 42 U.S.C. § 405(g).

On November 22, 2010, Fait filed the instant Complaint seeking judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), of the SSA's decision that he was not disabled on or before December 31, 1985, and was therefore not entitled to DAC, DIB, or SSI benefits. (Compl. (Docket Entry #1).) Fait and the Commissioner cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Def. Mem. (Docket Entry # 14); Pl. Mem. (Docket Entry # 16).) Both filed reply memoranda in further support of their motions for judgment on the pleadings. (Def. Reply Mem. (Docket Entry # 17); Pl. Reply Mem. (Docket Entry #18).)

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to

4

relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

**B.  Review of Final Determinations of the Social Security Administration**

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see also Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as long as (1) the ALJ has applied the correct legal standard and (2) its findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

### C. Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4). In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.

> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (alterations omitted). But "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Pogozelski, 2004 WL 1146059, at *10.

## III.  DISCUSSION

Fait argues that the ALJ erred in concluding that he was not disabled on or before December 31, 1985, under the Social Security Act. (Compl. ¶ 51.) He does not dispute steps one, two, four, or five of the ALJ's five-step analysis: (1) that Fait "did not engage in substantial gainful activity" during the relevant time period (Rec. 3 at 102); (2) that through the date last insured, Fait had severe impairments of cannabis abuse and a personality disorder (id.); (4) that through the date last insured, Fait "had the residual capacity to perform a full range of work at all exertional levels" (id. at 104); and (5) that "there were jobs that existed in significant numbers in the national economy that [Fait] could have performed" (id. at 106).

At step three, the ALJ found that, through the date last insured, Fait "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Id. at 103.) In particular, he found that Fait's mental impairments did not meet or medically equal the criteria of listings 12.03 (schizophrenic, paranoid, and other psychotic disorders), 12.08 (personality disorders), or 12.09

7

(substance addiction disorders). (Id.) Accordingly, the ALJ concluded that Fait was not disabled under a step three analysis. (Id. at 104.)

Fait argues that the ALJ committed three errors in evaluating the severity of Fait's disability at step three. He asserts that the ALJ (1) failed to properly apply the "special technique" in evaluating Fait's mental impairments; (2) failed to follow the factors for determining the onset date of disability; and (3) applied the wrong standard for determining the materiality of his substance abuse. (Pl. Mem. at 3.)

### A.    Application of the "Special Technique" in Evaluating Mental Impairment

Fait first argues that the ALJ erred by failing to properly apply the "special technique" required to evaluate the severity of mental impairments. (Id. at 18.) He is correct.

Where, as here, the ALJ determines that a patient has one or more medically determinable mental impairments, he must then apply a "special technique" in which he "rate[s] the degree of functional limitation resulting from the impairment(s)." 20 C.F.R § 404.1520a(b). The ALJ must rate the degree of functional limitation for each of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Id. § 404.1520a(c)(3). Ratings of the first three functional areas are made on a five-point scale—none, mild, moderate, marked, and extreme—and ratings of the fourth functional area are made on a four-point scale—none, one or two, three, and four or more. Id. § 404.1520a(c)(4).

The ALJ's application of the special technique must be documented, and the ALJ "must include a specific finding as to the degree of limitation in each functional area." Id. § 404.1520a(e)(4); see also Kohler v. Astrue, 546 F.3d 260, 266 (2d Cir. 2008). If the ALJ fails to provide specific findings regarding the degree of limitation in each of the four functional

areas, then the reviewing court will be unable to determine whether "there is substantial evidence for the ALJ's conclusion that [the patient's] impairment, while severe, was not as severe as any listed disabling condition," and the case should be remanded. Kohler, 546 F.3d at 267-68.

Paragraph B of each of the listings of impairments sets forth the minimum necessary findings for that particular impairment in each of the four § 404.1520a(c)(3) functional areas. See 20 C.R.F. § 404 App'x 1 at 12.03B, 12.08B, 12.09D.[2] Here, the three listings considered by the ALJ each require two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration," id., where "marked" is defined as "more than moderate but less than extreme," id. at 12.00C, and "extended duration" is defined as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks," id.

Neither side disputes the ALJ's findings that in the relevant time period Fait had only the severe impairments of cannabis abuse and a personality disorder, and so only the 12.03, 12.08, and 12.09 lists were at issue. In dispute is whether the ALJ's subsequent analysis meets the necessary degree of specificity required by law. For the reasons described below, it does not.

In his report, ALJ Vecchio wrote:

> [T]he record is devoid of contemporaneous evidence documenting that the claimant's activities of daily living, social functioning, or concentration were significantly compromised by any symptom or medical condition on or before December 31, 1985. Also absent from the record are any documented episodes of decompensation on or before December 31, 1985, or at any time thereafter; evidence of a residual disease process that resulted in such marginal adjustment that even minimal increase in mental demands would be expected to cause

---

[2] Listing impairment 12.09 (substance addiction disorders) requires satisfaction of the required level of severity for any of nine different disorders. 20 C.F.R. § 404 App'x. 1 at 12.09. Of relevance here is paragraph D of listing 12.09 (personality disorders), which refers back to an evaluation under listing 12.08. Id. Thus, satisfaction of 12.09 here requires satisfaction, inter alia, of the 12.08B requirements.

9

> decompensation; or evidence showing a history of one or more years of inability to function outside a highly supportive living arrangement.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.

(Rec. 3 at 104.)

The ALJ's blanket statements that the record is devoid of contemporaneous evidence with respect to each of the four functional areas fail to provide the court with specific findings as to Fait's degree of limitation in any of those areas. Consequently, the court is unable to determine whether the ALJ's decision is supported by substantial evidence. See Kohler, 546 F.3d at 267-68. While the ALJ could have properly found that the evidence for each of the functional groups merited a ranking of "none," he was still obligated to provide *specific findings* justifying each of these rankings. See id. And to the extent that the record was insufficient for the ALJ to adequately assess a basis for granting or denying benefits, the ALJ had an "affirmative duty to investigate facts and develop the record." Pogozelski, 2004 WL 1146059, at *10. His failure to properly apply the "special technique" constitutes an error of law and cause for remand. See Kohler, 546 F.3d at 267-68.

While courts have at times found that an ALJ's failure to follow the "special technique" resulted in harmless error, see, e.g., Arguinzoni v. Astrue, No. 08-CV-6356 (T), 2009 WL 1765252, at *9 (W.D.N.Y. June 22, 2009), here it is not clear whether the ALJ would have reached the same conclusion had he adhered to the regulations, as there was significant evidence in the record bearing on the four functional areas that the ALJ did not explicitly consider, see Day v. Astrue, No. 09-CV-131 (DRH), 2011 WL 1467652, at *13 (E.D.N.Y. Apr. 18, 2011) (court was unable to determine if failure to apply the special technique constituted harmless error where the ALJ did not address significant evidence in the record). Specifically, the ALJ did not

10

address potentially relevant testimony from Fait, his uncle, a treating physician, and the reviewing physician.

Fait testified before ALJ Crispino on May 16, 2005, that from age sixteen he was "always lonely and depressed" (Rec. 3 at 42), had no friends, could not get along with anyone, was always in fights, and was thrown out of school (id. at 47). It was around this time that he developed a fear of germs, causing him to wash his hands 100 times a day, use a fork to turn on the television instead of touching the button, and run away from people or put paper over his face to avoid contact. (Id. at 67-69.)

Fait's uncle, Irwin Leibowitz, testified at this same hearing that Fait at a young age was depressed, kept to himself, and would not speak with others. (Id. at 59.) Fait was nervous and extremely taut, and would run away when spoken to for fear of germs. (Id. at 65-66.) Fait did not get along well with other family members or students at school. (Id. at 57-58.)

The lone medical report prior to December 31, 1985, was prepared on October 29, 1985, by Dr. S. S. Kim, a staff psychiatrist at Coney Island Hospital. (Administrative Record (Docket Entry #19-1) ("Rec. 2") at 1-3.) The report lists Fait's self-reported problem as: "I don't want to work. I cannot get along with my parents. I am usually depressed. I do not want to go to school. I am lazy." (Id. at 1.) While Dr. Kim expressed skepticism about Fait's motivation for appearing for the evaluation and concluded that Fait was not mentally retarded or psychotic, Dr. Kim did write that "[t]his patient has had a long history of poor adjustment in his family and social life," and diagnosed Fait with atypical personality disorder. (Id. at 2-3.)

Finally, ALJ Vecchio called medical expert Dr. Rita Clark during the hearing on August 2, 2007, to provide a retrospective analysis of Fait's condition. Dr. Clark testified that there was enough evidence in the record to form an opinion as to Fait's psychiatric condition in 1985 or

earlier. (Rec. 4 at 37.) She stated that "[t]here was definitely something wrong with him," and that "[h]is main symptoms were this lack of motivation, inability to follow through, inability to pursue anything to conclusion, [and] social isolation." (Id. at 38.) However, she also stated that Fait did not meet the listing requirements for schizophrenia and, while he probably had a personality disorder, did not meet the Paragraph B criteria. (Id. at 39.)

All of this evidence is potentially relevant to the determination of Fait's functional limitations in activities of daily life, social functioning, and concentration, persistence, or pace. The ALJ's attempt to determine ratings for degrees of functional limitations simply by citing the lack of evidence on the record was an error of law, and his failure to ventilate relevant evidence on the record was improper. See 20 C.F.R. § 404.1520a; Kohler, 546 F.3d at 267-68. Accordingly, this case is remanded to the Commissioner for appropriate application and documentation of the special technique set forth in 20 C.F.R. § 404.1520a and, if necessary, for further development of the record.

### B.    Fait's Additional Claims

Fait also argues that the ALJ erred both in failing to follow the factors for determining onset dates of disabilities of nontraumatic origin (Pl. Mem. at 19), and by applying the wrong legal standard for determining the materiality of his substance abuse (id. at 22). Both of these issues would arise, however, only upon a finding that Fait suffered from a disability within the meaning of the Social Security Act during the relevant time period. See SSR 83-20, 1983 WL 31249, at *1; 20 C.F.R. § 404.1535(a). Here, the ALJ concluded that Fait was not disabled within the meaning of the Act. As such, there was no disability for which to determine an onset date or any need to determine the materiality of his substance abuse, and so in this regard the ALJ did not err. On remand, as discussed above, the ALJ must appropriately apply the special

technique for evaluation of mental impairments. If this process yields a determination that Fait was disabled within the meaning of the Act, then the ALJ must additionally apply the factors set forth in SSR 83-20 to establish an onset date for this disability, and must conduct a further analysis into the materiality of Fait's drug abuse in contributing to his disability.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is DENIED, Plaintiff's cross-motion for judgment on the pleadings is GRANTED, and this case is REMANDED to the Commissioner for appropriate application and documentation of the "special technique" set forth at 20 C.F.R. § 404.1520a and, if necessary, for further development of the record, to determine the onset date of disability, and to the determine the materiality of Fait's substance abuse.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York　　　　　　　　　　　　　　NICHOLAS G. GARAUFIS
　　　　June 25, 2012　　　　　　　　　　　　　　　　United States District Judge